# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA LYNN BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.  1:20-cv-00721-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 28, 29, 34) |

## I.

## INTRODUCTION

Anna Lynn Brown ("Plaintiff" or "Brown") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from degenerative disc disease of the lumbar spine, degenerative joint disease, spondylosis, arthritis, fibromyalgia, myalgia and myositis, mild bilateral carpal tunnel syndrome, hypertension, obesity, psoriasis, status-post hysterectomy, gastro esophageal reflux

---

[1]  The parties have consented to the jurisdiction of the United States magistrate judge and this action has been assigned to the undersigned magistrate judge for all purposes.  (ECF Nos. 9, 12, 35.)

disease, irritable bowel syndrome, myofascial pain syndrome, cervical radiculitis, and hyperlipidemia.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A.   Procedural History

On November 10, 2016, Plaintiff filed a Title II application for disability insurance benefits, and application for supplemental social security benefits, alleging a period of disability beginning on April 17, 2015.  (AR 276-307.)  The Title II application was amended on March 10, 2017.  (AR 283-84.)  Plaintiff's claim was initially denied on April 25, 2017, and denied upon reconsideration on August 3, 2017.  (AR 191-201, 203-208.)  On September 13, 2017, Plaintiff submitted a request for a hearing before an Administrative Law Judge, and on May 3, 2019, Plaintiff appeared before Administrative Law Judge David LaBarre (the "ALJ"), for an administrative hearing.  (AR 35-68, 209-210.)  On July 9, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 13-34.)  On April 16, 2020, the Appeals Council denied Plaintiff's request for review.  (AR 2-7.)

Plaintiff filed this action on May 22, 2020, and seeks judicial review of the denial of her application for disability benefits.  (ECF No. 1.)  On June 1, 2021, Plaintiff filed an opening brief.  (ECF No. 28.)  On July 12, 2021, Defendant filed a brief in opposition.  (ECF No. 33.)  On July 27, 2021, Plaintiff filed a reply brief.  (ECF No. 34.)

### B.   Relevant Hearing Testimony

Plaintiff testified at the May 3, 2019 hearing with the assistance of counsel.  (AR 35-68.)  Plaintiff stated she last worked in approximately 2014, though also answered she last worked as a transcriptionist in 2012.  (AR 41-42.)  Plaintiff worked as a receptionist in 2004 at an animal hospital.  (AR 43.)  In 2005, Plaintiff worked as a customer service representative, and lifted a maximum of two pounds, as the job only involved paperwork.  (AR 44.)  Plaintiff worked for the City of Alameda helping kids after school, for three or four years, a few hours a day for four days a week.  (AR 44-45.)

1    Plaintiff testified she is not currently able to work for several reasons: it is hard for her to

2    concentrate; she can't do a lot with her hands because they go numb, lasting up to 10 minutes;

3    when she is in a lot of pain it is hard to do anything besides taking care of herself and using the

4    restroom; it is hard to get up and think about going to work because she does not know how she

5    is going to feel; her lower back gets "pinchy"; she has a hard time with her hands because of the

6    weather; and it is very hard to get comfortable.  (AR 45-46.)  Plaintiff testified her pain is

7    everywhere, but the most pain in the previous six months was in the hands, shoulders, and neck,

8    and it becomes very tight and pinchy and difficult to do a lot of things.  (AR 46.)  Plaintiff is

9    usually only able to watch television.  On a good day, Plaintiff can do light dusting, can maybe

10   clean the bathroom a bit at a time, which takes a couple days to clean.  (Id.)

11   On the day of the hearing, Plaintiff's pain intensity level was at a 6, with medication.

12   (Id.)  On a bad day, it can get up to a 9, and Plaintiff remains in bed most of such days.  (Id.)

13   Plaintiff's skin is very sensitive to touch, and it is hard to take a shower because of the pain of

14   the water hitting her.  (Id.)  As far as bad days, Plaintiff has anywhere from 4 to 6 to 8 days a

15   month with issues, sometimes shorter or longer in duration depending on the day.  (AR 46-47.)

16   Plaintiff lives with her sisters because she can't live by herself.  (AR 47.)  This is because

17   she cannot do the household daily chores, and struggles to be independent.  (Id.)

18   Plaintiff is limited in walking in that she has to wear orthotic shoes, and can walk maybe

19   ten minutes every couple of days, an amount she has built up to in the past few weeks.  (Id.)

20   After a really bad day, Plaintiff is unable to go out like that for another week or two.  (Id.)  After

21   ten minutes of walking, Plaintiff has to sit down because the lower back is badly pinching, and

22   the legs get tingly.  (Id.)

23   Plaintiff has to put on a headset to use the phone as she cannot hold the phone for more

24   than five minutes, or the fingers go numb and tingly.  (AR 48.)  The same happens when she

25   writes for more than five minutes, and she has to stop and stretch her fingers.  (Id.)

26   Counsel then examined Plaintiff.  Plaintiff confirmed she can only dust and clean on

27   good days, and that on bad days she tries to remain comfortable in an adjustable bed.  (Id.)

28   Plaintiff confirmed it was exhausting to have pain all of the time, and the pain limits her ability

1  to complete tasks.  (AR 49.)

2      The ALJ then resumed examination.  (AR 50.)  Plaintiff stated a typical day begins with

3  getting up and making coffee; she takes a shower; has breakfast; then sits and watches television;

4  she gets up every 15 minutes or so to move around and stretch; on a good day or really good day

5  she does light cleaning, or small loads of laundry; and if she is really feeling good, Plaintiff does

6  some cooking to contribute to the household.  (Id.)

7      Plaintiff testified that depression adds to other issues, and she didn't realize she was so

8  depressed until her doctor told her to see a therapist, which she began a little over a year prior to

9  the hearing.  The therapist told her that the depression adds to her stress and anxiety, which she is

10  learning to deal with.  (AR 51.)  Plaintiff testified that for depression and anxiety, she was taking

11  amitriptyline at night to sleep that helps with the nerves.  Plaintiff stated they hadn't really talked

12  about taking medications for depression because she is already taking so much medication.  (Id.)

13  Plaintiff would like to control depression without medication and that is what she has been trying

14  to do.

15      Plaintiff rarely drives, and when she has to, goes a quarter-mile roundtrip to the corner

16  pharmacy at Walmart.  (Id.)  If she has to go to the doctor, she has to wait until she returns to

17  take her pain medication.  (Id.)  Thus, she tries to get her appointments in the morning, as if she

18  can't drive, her sisters take time off work to help.  (Id.)  Plaintiff says she drives maybe twice a

19  month maximum.  (AR 51-52.)  Other than the doctor, Plaintiff testified she can't do anything

20  outside the household, and when she tried taking some art classes, she only lasted three days.

21  (AR 52.)

22      Plaintiff's sister Ms. Niday testified.  (Id.)  Plaintiff and her sister had lived together for 5

23  years.  (AR 53.)  The sister stated Plaintiff cannot live by herself because she doesn't drive much

24  and can't drive far; can't do a lot of things; can't do housework; can cook a little; but can't stand

25  for a long time.  (Id.)  Knowing her condition would not improve, they made the decision to all

26  live together.  (Id.)  Ms. Niday testified that Plaintiff is very limited in lifting and mobility; that

27  her driving is very limited; her hands and wrists go numb and tingle; her feet sometimes do as

28  well; she can't sit for very long; can only make light meals; and can really only go to Walmart

4

and pick up a few things.  (AR 54.)  Ms. Niday stated Plaintiff can sit for maybe 20 minutes, then her legs and feet get numb, but mostly her back will bother her, and she needs to stand or lay down.  (Id.)  Ms. Niday also testified that Plaintiff's depression is noticeable as she is different than she was before, not as happy, and does not have enjoyment in her life anymore.  (AR 55.)

The Vocational Expert Ms. Sidio ("VE") then testified.  (Id.)  The VE classified Plaintiff's past work as: (1) customer service, order clerk, SVP 4, and strength level sedentary; (2) receptionist, SVP 4, strength level sedentary; (3) recreational aide, SVP 2, strength level light; and (4) transcriber, SVP 5, strength level sedentary.  (AR 56.)

The VE was presented with a hypothetical person with the same education and work experience who is able to perform light work with the following limitations: frequently climb, balance, kneel, crouch and crawl; able to occasionally stoop and climb ladders, ropes, and scaffolds; can perform handling, fingering and feeling with the bilateral upper extremities frequently.  (AR 57.)  The VE testified that such person could perform the past work of customer service clerk, receptionist, and recreational aide, as actually and generally performed.  (AR 57-58.)  The transcriber position would require constant fingering, however.  (AR 59.)

The next hypothetical person was presented as able to perform light exertional work, as limited to: occasionally lifting and carrying 20 pounds; frequently lifting and carrying 10 pounds; standing and walking six hours in an eight hour workday with normal breaks; sit six hours in an eight hour workday with normal breaks; and can occasionally stoop, crouch, kneel, squat, crawl, and climb ladders; frequently climb stairs; must avoid concentrated exposure to vibrations, wet or humid atmospheres; but is able to understand, remember, and carry out simple and complex work instructions and adapt to changes in work.  (AR 58.)  The VE testified such person could perform the past work of customer service clerk, receptionist, and recreational aide, as actually and generally performed, though not transcriber.  (AR 59.)

If off-task less than 10% of a workday and absent once per month, such person could still perform the past three jobs.  (Id.)  The VE testified that even at an off-task level of 10%, a 90% productivity level is acceptable for most employers.  (AR 60.)  The VE testified that being off-task 15% or 20% would put such person out of work.  (Id.)  The VE testified that usually one or

two absences a month is acceptable, though two is usually if they are exceptional at their job when they are present.  (Id.)  Thus, two absences would usually put someone out of work.  (AR 61.)

The ALJ presented a hypothetical person able to perform sedentary work with the specific limitations of: frequently able to lift and carry 5 pounds; occasionally lift and carry 10 pounds; sit for six hours in a workday; stand and walk two hours in a workday; can occasionally stoop, crouch, kneel, squat, crawl; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; must avoid concentrated exposure to vibrations and wet or humid atmospheres; can understand, remember, and carry out simple and complex work instructions and able to adapt to changes in work settings; would be off task less than 10% of workday; and absent once per month.  (AR 62.)  The VE testified such person could perform the past work of customer service clerk, and receptionist.  (AR 62-63.)  The same work would be available with the added limitation of needing to sit for 60 minutes after every 10 minutes of walking.  (Id.)

Counsel added a requirement of additional 30 minute breaks on top of normal breaks, and the VE testified that would be unacceptable.  (AR 64.)  Counsel then added limitations of fingering and handling bilaterally to occasionally, and such limitation would eliminate the past work positions.  (Id.)  Counsel then imposed the limitations of occasional reaching and occasional fingering and handling, with light exertional level (the first hypothetical with occasional reaching), and the VE testified there are other work options, including: counter clerk, furniture rental consultant, and dealer accounts investigator.  (AR 65.)  Counsel then proffered hypothetical one with a requirement to have her legs elevated throughout times during the day, to a level of 90 degrees, and that would preclude work.  (AR 66.)  At 30% elevation, the prior jobs would be appropriate.  (Id.)  Finally, a hypothetical person able to perform sedentary, unskilled work that can perform only occasional fingering and handling would have no past relevant work. (AR 66-67.)

### C.   The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff's date last insured is December 31, 2017.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 17, 2015.
- Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease, spondylosis, arthritis, fibromyalgia, myalgia and myositis, mild bilateral carpal tunnel syndrome, hypertension, obesity, psoriasis, status-post hysterectomy, gastro esophageal reflux disease, irritable bowel syndrome, myofascial pain syndrome, cervical radiculitis, and hyperlipidemia.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
- Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can lift and carry up to five pounds frequently, ten pounds occasionally; she can sit for six hours, and stand and/or walk for two hours in an eight hour workday, with normal breaks. She can occasionally stoop, crouch, kneel, squat, or crawl. She should never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs. She must avoid concentrated exposure to vibrations and wet or humid atmospheres. She can understand, remember, and carry out simple and complex tasks and adapt to changes in routine work settings. The claimant ais likely to be off task up to 10% of the workday and be absent 1 day per month. Finally, she requires the option to sit for at least sixty minutes after every ten minutes of standing and/or walking.
- Plaintiff is capable of performing past relevant work as a Customer Service Order Clerk and Receptionist. This work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity (20 CFR 404.1565 and 416.965).
- Plaintiff has not been under a disability, as defined in the Social Security Act, for Medicare hospital insurance as a Medicare qualified employee from April 17, 2015, through July 9, 2019.

(AR 20-29.)

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., and Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

2   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

3   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a

4   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

5   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

6   considering the record as a *whole*, a reasonable person might accept as adequate to support a

7   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

8   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

9        "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

11  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

12  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

13  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

14  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

15  upheld.").

16  **IV.**

17  **DISCUSSION AND ANALYSIS**

18       Plaintiff argues the ALJ erred by: (1) incorrectly discounting Dr. Watrous's opinion; and

19  (2) incorrectly evaluating Plaintiff's symptom testimony.  (Pl.'s Opening Br. ("Br.") 6-11, 12-14,

20  ECF No. 28.)

21      **A.**    **The Relevant Excerpts from the ALJ's Opinion**

22       As relevant to both the weighing of Dr. Watrous' opinion, and the ALJ's credibility

23  determination concerning Plaintiff's testimony, the ALJ made the following findings:

> 24  As for the claimant's statements about the intensity, persistence,
> and limiting effects of his or her[3] symptoms, they are inconsistent
> 25  because they are not fully supported by the objective medical
> evidence.  In terms of the claimant's musculoskeletal impairments,
> 26  the undersigned notes the claimant's history of multiple

27  _____

28  [3]  The Court notes it appears the ALJ erroneously kept some boilerplate language here in the opinion by utilizing both pronouns.

degenerative conditions of the back and joints, fibromyalgia, and resulting chronic pain and radiculitis. The claimant underwent a rheumatological evaluation with Daniel Watrous, M.D., in May 2015. There, the claimant's physical examination revealed no signs of active synovitis, erythema, increased warmth, or joint effusion in the peripheral joints. While some mild crepitus was noted in the bilateral knees, no significant loss of motion was appreciated. Additionally, some mild to moderate tenderness was noted in the fibromyalgia points, but the claimant's periarticular tissues indicated no signs of vasculitis, tendonitis or bursitis. Furthermore, some tenderness was appreciated in the spinal examination, without evidence of muscle spasms or tender sacroiliac joints. Based on this, Dr. Watrous assessed the claimant with a history of fibromyalgia with chronic low back pain and mild carpal tunnel syndrome, recommending Enbrel and additional follow up. She continued to treat with Dr. Watrous over the following years, who noted the claimant's variable pain symptoms, but she was generally well managed on a variety of pain medications and steroids. Throughout her treatment with Dr. Watrous, physical examinations generally demonstrated mild to moderate joint tenderness with only mild swelling on occasion, and no significant redness, effusion, or loss of motion. While Dr. Watrous appreciated some moderate tenderness in the fibromyalgia points on occasion, she reported only intermittently flaring fibromyalgia symptoms and generally good response to oral and injected medications. Over the years, the claimant reported increasing pain or decreasing efficacy of her medications, requiring adjustments or new prescriptions. However, even though the claimant reported ongoing pain, she admitted her pain symptoms were typically well managed, at 80% or better pain relief, with medications. (Exhibits C1F, C4F, C5F, C6F). More recent examinations indicated somewhat worsening symptoms, including right shoulder swelling, pervasive tenderness in the upper back musculature, and mild tenderness in the left upper extremity joints, but she retained normal gait and stance, and had no localized joint swelling or severely tender joints. The claimant also had updated diagnostic imaging reports taken in January 2019. A right shoulder spine x-ray indicated no evidence of fracture, dislocation, or destructive lesion of the shoulder, but some minimal spurring was seen at the acromioclavicular joint. Additionally, a cervical spine x-ray indicated unremarkable soft tissues and no evidence of fracture or misalignment, and a lumbar spine x-ray showed some moderately decreased disc space at L5-S1 and some mild early spurring at L4-5. (Exhibit C13F).

Turning to her cardiovascular impairments, an echocardiogram taken in early 2017 revealed a small left ventricle and hyper dynamic left ventricular systolic function. Additionally, she had a normal ejection fraction of 75.3%, and no visualized left ventricular thrombus. Some mild diastolic dysfunction was noted, as well as some prolonged deceleration time, consistent with impaired left ventricular relaxation. The mitral valve was normal, with only trace regurgitation noted. Additionally, a myocardial perfusion study was within normal limits. (Exhibit C2F).

As for her gastrointestinal impairments, the objective medical evidence indicates few significant complaints during the period at issue, but the undersigned notes the claimant's history of gastrointestinal problems in finding this impairment continues to be sever.  (see, e.g., Exhibit C7F).

Finally, in terms of obesity, the National Institutes of Health classify individuals as obese if their Body Mass Index (BMI) exceeds 30 . . . Based on [her] measurements, she has a BMI of 38.61.  (Exhibit C12F).  SSR 02-1p provides that obesity can cause limitations in function; including limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balance, stooping, and crouching.  This Ruling also states that obesity can cause limitations in the ability to manipulate with hands or fingers, limitations in tolerance of environmental factors such as heat, humidity, or hazards; and social limitations.  Although there is no specific level or weight or BMI that equates with a "severe" or a "not severe" impairment nor do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes, an individualized assessment of the impact of obesity on an individual's functioning is done to determine whether the impairment is severe.  Accordingly, the undersigned finds that the Level II obesity alone causes significant limitation in his[4] ability to perform basic work activities, and the residual functional capacity above which limits the claimant to light exertional work with non-exertional limitations more than adequately accounts for this impairment.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 24-26.)

The ALJ assigned partial weight to Dr. Watrous's opined limitations as follows:

Dr. Watrous determined the claimant can sit, stand, and/or walk for less than two hours each in an eight-hour workday, and will need the ability to change positions and walk around throughout the workday.  Additionally, he indicated the claimant likely will require unscheduled breaks every fifteen to twenty minutes, lasting up to ten minutes each, and should elevate her legs to a ninety degree angle for up to thirty percent of the workday.  Additionally, she can occasionally lift and carry up to ten pounds, and can rarely twist, but should never carry heavier weights or perform other postural activities.  Finally, he stated that the claimant is incapable of even low stress work and is likely to be absent from work more

---

[4]  The ALJ again erroneously used the pronoun "him" here.

than four days per month.  (Exhibit C9F).  Dr. Watrous is accorded partial weight, as the claimant's consistent treating source. However, the objective medical evidence, and particularly Dr. Watrous's own examination records, do not support the extent of these limitations.  While his treatment notes focused thoroughly on the claimant's subjective reports and complaints, he objectively only noted mild to moderate tenderness in the joints and back, no significant swelling or range of motion restrictions, and intermittently tender fibromyalgia points.  Moreover, the claimant often reported good management of her symptoms with medications, and her imaging reports suggested only mild to moderate joint degeneration.  (Exhibits C1F, C6F, C13F).  for these reasons, Dr. Wa[]trous is accorded only partial weight.

(AR 26.)

The ALJ also accorded partial weight to the agency medical consultants:

As for the opinion evidence, partial weight is accorded to the State agency medical consultants, who determined the claimant can perform a range of light exertional work with postural and manipulative limitations. (Exhibits C6A, C9A).  The State agency is accorded partial weight, because while somewhat supported by the record, the undersigned finds the claimant's ongoing symptoms, as well as complications with some degenerative disc disease in the lumbar spine, support a finding that the claimant is not capable of standing and walking for extended periods. However, the objective medical evidence as a whole somewhat supports this determination, as the evidence consistently showed mild to moderate musculoskeletal tenderness, no significant joint swelling or range of motion restrictions, and normal gait.  (Exhibits C2F, C6F, C7F).  For these reasons, the State agency is accorded only partial weight.

(AR 26.)

## B.     Whether the ALJ Properly Weighed Dr. Watrous' Opinion

Plaintiff challenges the ALJ's weighing of Dr. Watrous' opinion; argues the ALJ erred by not giving Dr. Watrous' opinion controlling weight; and argues the ALJ misunderstood how fibromyalgia and chronic pain syndrome is evaluated and treated.  (Br. 6-11.)

### 1.     Legal Standard

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians."  Orn v. Astrue,

1  495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)); see also Garrison v.

2  Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("While the opinion of a treating physician is thus

3  entitled to greater weight than that of an examining physician, the opinion of an examining

4  physician is entitled to greater weight than that of a non-examining physician.").

5       "If a treating or examining doctor's opinion is contradicted by another doctor's opinion,

6  an ALJ may only reject it by providing specific and legitimate reasons that are supported by

7  substantial evidence."  Garrison, 759 F.3d at 1012 (citing 20 C.F.R. § 404.1527(d)(3)).  The

8  contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,

9  legitimate reason for rejecting a treating or examining physician's opinion, however, "it may

10  constitute substantial evidence when it is consistent with other independent evidence in the

11  record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  "The weight afforded a

12  non-examining physician's testimony depends 'on the degree to which [he] provide[s]

13  supporting explanations for [his] opinions.' "  Garrison, 759 F.3d at 1012 (citations omitted).

14       The ALJ need not accept the opinion of any physician that is brief, conclusory, and

15  unsupported by clinical findings.  Thomas v. Barnhart, 278 F.3d at 957.  It is the ALJ's

16  responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity.

17  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).  The ALJ can meet

18  her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical

19  evidence, stating [her] interpretation thereof, and making findings."  Magallanes v. Bowen, 881

20  F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)).

21       Here, Plaintiff's treating physician opinion from Dr. Watrous is contradicted by the

22  opinions of the State agency consulting physicians.  (AR 26, 142-154, 157-170.)  Therefore, the

23  ALJ only needed to provide specific and legitimate reasons that are supported by substantial

24  evidence in the record to reject the treating physician's opinion.

25       2.    Plaintiff's Arguments

26       Plaintiff proffers that because the medical records largely pertain to fibromyalgia and

27  chronic pain syndrome, "this case turns on whether the ALJ properly found Brown not disabled

28  based on conclusions about her fibromyalgia related limitations."  (Br. 7.)  Plaintiff directs the

Court to caselaw pertaining to fibromyalgia, specifically, the dissenting Circuit Judge in Rollins who opined "the scarcity of objective medical evidence in this case is probative only of the majority's lack of understanding of fibromyalgia [as] [o]ne of the most striking aspects of this disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting). The opinion quoted the following from a medical text:

> Patients with FMS [ (fibromyalgia syndrome) ] usually look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness.
>
> The most striking and unique finding in FMS is the presence of multiple tender points. Blind studies have established that these tender points are both quantitatively and qualitatively different from those observed in healthy persons and in those with other chronic pain conditions.... Patients with FMS not only hurt more, but they also hurt in many more places than other patients.

Rollins, 261 F.3d at 863 (quoting Muhammad B. Yunus, *Fibromyalgia syndrome: blueprint for a reliable diagnosis,* Consultant, June 1996 at 1260) (Ferguson, J., dissenting); see also Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) ("The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.").

Plaintiff also directs the Court to social Security Ruling 12-2P, which provides two sets of criteria for diagnosing the condition. Specifically, the Ruling provides that a person has a medically determinable impairment of fibromyalgia if the claimant has all three of: (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months"; (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally . . . and both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." Soc. Sec. Ruling, Ssr 12-2p; Titles Ii & Xvi: Evaluation of

1   Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012).  Because a diagnosis of fibromyalgia does not
2   rely on x-rays or MRIs, and because SSR 12-2P recognizes symptoms wax and wane with good
3   and bad days, Plaintiff emphasizes the Ruling warns that after a claimant has established a
4   diagnosis, an RFC analysis should consider "a longitudinal record whenever possible," SSR 12-
5   2P.  (Br. 9.)

6          Here, Plaintiff argues that her symptoms began around the year 2000, (AR 349), however
7   it was not until 2015 that they became significantly worse.  Plaintiff highlights a letter she
8   submitted to the agency wherein she claimed headaches became like hammers beating on the
9   skull, and claimed sharp and severe pain in the neck, wrists, and back, which limited her ability
10  to focus and concentrate, walk, stand, and sit, and impacted her ability to properly and
11  independently handle everyday activities.  (Br. 9, citing AR 352-353.)

12         As to encounters with Dr. Watrous, Plaintiff notes he saw Plaintiff at least thirty-nine
13  (39) times for appointments between 2015 and 2019.  During these visits, Plaintiff complained of
14  fatigue, chronic pain, severe headaches, and muscle weakness (AR 395), complained numerous
15  times of difficulty sleeping, of stiffness in joints, and of difficulty with activities and walking
16  (AR 397).  (Br. 10.)  Plaintiff complained that her pain was exacerbated by over-activity,
17  immobility, walking, sitting, standing, weather changes, and health, and that constantly changing
18  positions and resting alleviated the pain.  (AR 405.)  Plaintiff complained of pain all over the
19  joints that was aching, of soreness, and of throbbing, all worse in the neck and wrists.  (Br. 10,
20  AR 415)  Plaintiff emphasizes that Dr. Watrous noted: Plaintiff had worse joint pain in the right
21  knee and the lower back, and difficulty getting out of bed due to stiffness (AR 431); that Brown
22  suffered with joint redness, dry mouth, allergy problems, and hand and leg swelling (AR 548,
23  765); that Brown had several tender joints in the back, all muscles, left wrist, and right shoulder
24  (AR 912.); that Brown had difficulty controlling pain, "contrary to what ALJ stated" (AR 660);
25  Brown had an abnormal cervical spine and lumbar lumbosacral spine (AR 660); had progression
26  in pain to joints; and more psoriasis in ears, elbows, as well as nails lifting due to psoriasis (AR
27  914).  (Br. 10.)

28         Plaintiff argues the continual and consistent reporting of pain, stress, and fatigue, was

15

1  used by Dr. Watrous to properly evaluate and diagnosis Plaintiff in line with how fibromyalgia

2  and chronic pain syndrome is evaluated and treated.  (Br. 11.)  Plaintiff contends the ALJ

3  improperly gave Dr. Watrous' opinion less weight as based on subjective reports and complaints;

4  because Dr. Watrous objectively only noted mild to moderate tenderness in the joints and back,

5  and intermittently tender fibromyalgia points, however, Plaintiff argues as above that

6  fibromyalgia is diagnosed entirely on the basis of patients' reports.  (Br. 11.)

7          3.      The Court finds the ALJ Properly Weighed Dr. Watrous' Opinion

8          Defendant first responds that the ALJ reasonably relied on the State agency opinions in

9  conjunction with the weighing of Dr. Watrous' opinion.  (Def.'s Opp'n Pl.'s Br. ("Opp'n" 8.)

10  The Court agrees.

11          The Court excerpted the relevant portion of the opinion above where he ALJ accorded

12  partial weight to the agency medical consultants.  (AR 26.)  In assigning partial weight, the ALJ

13  concluded that Plaintiff's limitations were more restricted, reducing her RFC from light, as

14  assessed by the State agency consultants, to sedentary to account for difficulty with extensive

15  standing and walking from Plaintiff's reported pain and tenderness.  (AR 26.)

16          The Court finds the ALJ appropriately found the objective medical evidence as a whole

17  somewhat supported the state agency opinions, although only partial weight was afforded.

18  Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also

19  serve as substantial evidence when the opinions are consistent with independent clinical findings

20  or other evidence in the record."); Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) ("It

21  is not necessary to agree with everything an expert witness says in order to hold that his

22  testimony contains substantial evidence") (quotation marks and citation omitted).  The ALJ also

23  appropriately discussed Dr. Watrous' opinion, acknowledging that Dr. Watrous was a long-term

24  treating source, but assigning reduced weight to the opinion finding it not supported by Dr.

25  Watrous' own findings and to be not consistent with the record as a whole (AR 26).  See 20

26  C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of

27  the nature and severity of your impairment(s) is well-supported by medically acceptable clinical

28  and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in your case record, we will give it controlling weight.  When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion."); 20 C.F.R. § 404.1527(c)(2)(i) (ALJ considers the length and nature of treatment relationship with the claimant); 20 C.F.R. § 404.1527(c)(3) (ALJ considers how well a source supports his opinion with relevant evidence); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); see also Magallanes, 881 F.2d at 751 ("The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability" and an ALJ may reject a treating source opinion that is not supported by clinical findings).

Specifically, the ALJ explained that treatment notes from physical exams with Dr. Watrous showed that Plaintiff had only mild to moderate tenderness in the joints and back, generally no significant swelling in the joints or range of motion restrictions, and intermittently flaring fibromyalgia symptoms with generally good response to oral and injected medications. (AR 24-26, citing AR 395-457, 654-758, 904-942.)  On review of these records, the Court finds the ALJ's assessment to be an accurate description of the physical exams conducted by Dr. Watrous who routinely noted mild to moderate tenderness, no swelling, no effusion, and no loss of motion across various areas of the body, through years of appointments.  (See AR 396 (3/17/2016), 398 (6/13/2016), 402 (7/15/2015), 406 (7/13/2016), 409 (8/16/2016), 412 (11/15/2016), 416 (2/15/2017), 420 (6/15/2015), 423 (8/11/2015), 426 (9/16/2015), 429 (10/26/2015), 432 (12/17/2015), 435 (5/14/2015), 654 (11/1/2018), 660 (12/4/2018), 666 (1/8/2019), 699 (10/25/2017), 702 (11/28/2017), 704 (12/21/2017), 707 (1/24/2018), 710 (2/7/2018), 713 (10/11/2017), 716 (4/4/2018), 720 (9/18/2018), 724 (3/7/2018), 727 (2/21/2018), 730 (7/13/2016), 733 (8/16/2016), 736 (11/15/2016), 739 (2/15/2017), 742 (5/15/2017), 745 (8/9/2017), 748 (9/13/2017), 751 (9/27/2017), 754 (7/15/2015), 757 (9/16/2015), 908 (1/8/2019),

912 (2/7/2019), 916 (3/12/2019), 921 (4/3/2019), 928 (4/22/2019).)[5]

The ALJ discounted Dr. Watrous' opinion in part based on a finding that the opined limitations were unsupported by the objective medical evidence as a whole and Dr. Watrous' own objective findings contained in the examination records, as compared to Dr. Watrous' reliance on subjective reports and complaints contained in the treatment notes. This Court has found this to be a specific and legitimate reason previously in the case of fibromyalgia, and here, finds the ALJ's findings to be a specific and legitimate reason supported by substantial evidence in the record. See Garcia v. Comm'r of Soc. Sec., Case No. 1:20-cv-00373-SAB, 2021 WL 1961737 (E.D. Cal. May 17, 2021) (affirming ALJ's rejection of a treating source opinion finding disabling limitations from fibromyalgia where examination notes showed normal findings including normal gait); Villafan v. Comm'r of Soc. Sec., Case No. 1:17-cv-01229-SAB, 2018 WL 2734914 (E.D. Cal. June 4, 2018) (affirming ALJ's rejection of a treating source opinion of disabling limitations from fibromyalgia based on normal physical examination findings such as full range of motion and good response to treatment).

As for Plaintiff's argument the ALJ misunderstood fibromyalgia by relying on examination findings to disagree with Dr. Watrous' opinion, Defendant states that is not accurate, as while it is true that certain objective evidence is not relevant to fibromyalgia, such as x-rays, MRIs, or neurological findings such as strength, sensation, and reflexes, Revels v. Berryhill, 874 F.3d 648, 663, 666 (9th Cir. 2017), a person alleging disabling pain from fibromyalgia could reasonably be expected to move with greater difficulty because of the pain, e.g., walking with an antalgic or slow gait, showing reduced range of motion, or other evidence of guarding to prevent or limit pain.[6]   Further, Defendant highlights that Dr. Watrous's notes

---

[5] For example, a typical examination note from these records, dated December 17, 2015, showed: mild tenderness; no swelling; no redness; no effusion in and no loss of motion in the lower back and the right knee; and moderate tenderness in the fibromyalgia points. (AR 432.) Two years later, on December 21, 2017, an exam showed: mild tenderness in the fibromyalgia points; mild to moderate tenderness; no swelling; no redness; no effusion; and no loss of motion in the right shoulder and lower back. (AR 704.)

[6] In Revels, the ALJ rejected the testimony of the claimant's physician finding that it was not supported by the objective medical evidence. Id. at 663. The appellate court found that the ALJ had erred by relying on four visits in which the doctor noted that the claimant's body parts were nontender with normal range of motion. Id. "Lacking certain tender points does not rule out fibromyalgia-related symptoms, since a doctor need only find eleven out of eighteen tender points to diagnose the condition. Moreover, a person with fibromyalgia may have 'muscle strength,

from the day he completed the questionnaire indicate that he based his responses on what Plaintiff told him rather than on actual examination findings (AR 919), and that the ALJ noted that while Dr. Watrous's "treatment notes focused thoroughly on the claimant's subjective reports and complaints, he objectively only noted mild to moderate tenderness in the joints and back, no significant swelling or range of motion restrictions, and intermittently tender fibromyalgia points." (AR 26).  (Opp'n 10.)

The ALJ here did rely on examination findings such as no reduced range of motion and no swelling, and rejection of subjective symptom reporting, which can be error in some circumstances when dealing with fibromyalgia.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("[T]he ALJ erred in discounting the opinions of Benecke's treating physicians, relying on his disbelief of Benecke's symptom testimony as well as his misunderstanding of fibromyalgia.")[7]; Campbell v. Astrue, No. SA CV 07-864-PLA, 2008 WL 4792672, at *10 (C.D. Cal. Oct. 29, 2008) ("[T]he ALJ's finding that Dr. Tsay relied quite heavily on the subjective report of symptoms and limitations . . . does not constitute a specific and legitimate reason for discounting Dr. Tsay's assessments . . . Dr. Tsay's reliance on plaintiff's subjective complaints hardly contradicts her findings concerning plaintiff's functional limitations, as [a] patient's report of complaints, or history, is an essential diagnostic tool. . . . This is especially true where plaintiff

---

sensory functions, and reflexes [that] are normal.' " Id. (citations omitted).  The ALJ also erred by finding that the opinion was not supported by the objective medical evidence because at multiple appointments, the evidence showed less than eleven out of eighteen tender points which demonstrated a fundamental lack of knowledge of fibromyalgia which is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." Id. (citations omitted).  "Pursuant to SSR 12-2P, tender-point examinations themselves constitute 'objective medical evidence' of fibromyalgia" and "symptoms of fibromyalgia wax and wane," so a person may have "bad days and good days." Revels, 74 F.3d at 663.

[7]  In Benecke, the ALJ expressed extreme skepticism of fibromyalgia overall, as erroneously expressed during the administrative hearing, as highlighted by the Ninth Circuit.  379 F.3d at 594 n.3 ("The ALJ expressed his skepticism at length during the hearing.  For example, the ALJ asserted that only one doctor was 'really saying the fibromyalgia.' [sic]  After Benecke's counsel pointed out that several doctors diagnosed Benecke with fibromyalgia, the ALJ asked, 'what on earth is that based on? I mean, there's no—I mean, how am I suppose [sic] to sit up here and listen to doctors tell me that there is nothing physical that they can find, yet she's so restricted ... [?] I just don't find that credible. ... I'm not seeing anything from the physical that would in any way justify those conclusions from the Rheumatologist other than trying to help the claimant get disability.... There's just the paucity of any objective findings whatsoever.... I mean, there was almost like a really buying [sic] into the syndrome in a way.' ").  The Ninth Circuit found the ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement, stating "[s]heer disbelief is no substitute for substantial evidence"  379 F.3d at 594.  Here the ALJ accepted the fibromyalgia diagnosis, but found the totality of the evidence reflected Plaintiff was less limited than Dr. Watrous opined.

1  was diagnosed with, *inter alia,* fibromyalgia, which is a diagnosis that often lacks objective

2  clinical findings.") (internal quotation marks and citations omitted).

3         However here, the ALJ did not only note the absence of objective findings or find an

4  improper reliance on subjective symptoms, but weighed the objective examinations by Dr.

5  Watrous as compared to the subjective reporting, and weighed such against all the evidence in

6  the record including the State agency physician opinions.   See Blair-Bain v. Astrue, 356 F.

7  App'x 85, 87–88 (9th Cir. 2009) ("The ALJ found that Blair–Bain had severe fibromyalgia, but

8  did not credit Dr. Kemple's opinion that Blair–Bain has medically determinable problems

9  presenting a substantial pattern of work impairment.   The ALJ provided at least two supportable

10  bases for rejecting Kemple's opinion.   First, the ALJ noted that Kemple's opinion was not

11  consistent with medical evidence in the record—specifically, Kemple's own notes from 2003,

12  and Dr. Sargent's notes.   The ALJ also noted that Kemple's diagnoses of other ailments were not

13  based on clinical findings, and so accorded them little weight.   These were specific and

14  legitimate reasons for discounting Dr. Kemple's opinion as to Blair–Bain's disability . . .

15  Likewise, the ALJ appropriately rejected Dr. Deodhar's diagnoses as to ailments other than

16  fibromyalgia, as they were based on Blair–Bain's discredited subjective complaints and were not

17  based on objective medical findings."); Brunetta v. Colvin, No. 1:15-CV-00873-AC, 2017 WL

18  427496, at *5 (D. Or. Jan. 31, 2017) ("As the ALJ denoted, although plaintiff suffered from the

19  severe impairment of fibromyalgia, Dr. Mateja's treatment records showed inconsistencies both

20  within his own notes and with the medical treatment notes of Dr. Dryland . . . Plaintiff argues the

21  ALJ misunderstands fibromyalgia, but this court finds plaintiff's argument unpersuasive . . .

22  Here, the ALJ acknowledged plaintiff[']s fibromyalgia was a severe impairment, yet discredited

23  only the overall limitations Dr. Mateja opined plaintiff would have because of this impairment.

24  *See* 20 C.F.R. § 404.1527(e)(1) (the law reserves the disability determination to the

25  Commissioner.)  Overall, this court finds the ALJ provided a specific and legitimate reason for

26  discrediting the opinion of Dr. Mateja with respect to plaintiff[']s fibromyalgia limitations.").

27  Further here, based on the Court's review of the records cited by the ALJ, the Court finds the

28  ALJ appropriately relied on the longitudinal record, and not erroneously on a few isolated

1  records that may reflect waxing and waning of symptoms, and appropriately determined an RFC

2  based on all of the alleged impairments.

3      Additionally, the Court finds in the following section that the ALJ provided clear and

4  convincing reasons to reject Plaintiff's subjective symptom testimony, and thus may properly

5  reject the opinion of Dr. Watrous based on a finding that it was largely dependent on such

6  symptom testimony.  See Silva v. Colvin, No. CV 12-6896-SP, 2013 WL 3467101, at *7 (C.D.

7  Cal. July 10, 2013) ("[T]he ALJ's failure to give a specific and legitimate reason for rejecting

8  Dr. Hoy's opinion that plaintiff had a severe upper extremities impairment and limitations

9  resulting from the impairment, to the extent the opinion rested on his fibromyalgia diagnosis, is

10 harmless.  Dr. Hoy's opined upper extremities limitations were based on subjective fibromyalgia

11 symptoms.  An ALJ may reject an opinion that is premised on properly discredited subjective

12 complaints . . . Here, the ALJ discounted plaintiff's credibility regarding her symptoms and

13 limitations."); Nazzal v. Astrue, 316 F. App'x 591, 593 (9th Cir. 2009) ("For all mental and

14 physical impairments we recognize that the symptoms a patient reports can be exaggerated or

15 false, and give substantial deference to the ALJ's decision of whether to credit them as true . . . A

16 diagnosis of fibromyalgia cannot automatically be beyond challenge.") (Kleinfeld, J.,

17 dissenting); cf. Rita L. S. v. Comm'r of Soc. Sec., No. 1:16-CV-01981-MC, 2018 WL 4361039,

18 at *7–8 (D. Or. Sept. 13, 2018) ("Nor does Dr. Durham's reliance on Plaintiff's subjective

19 symptom testimony in assessing Plaintiff's fibromyalgia-related limitations constitute a specific

20 and legitimate reason for assigning little weight to his opinion as the treating physician . . . as

21 discussed in the previous section, the ALJ failed to give clear and convincing reasons for

22 discounting Plaintiff's subjective symptom testimony.").  This is not a case where the ALJ failed

23 to provide clear and convincing reasons to reject the subjective symptom testimony that a

24 treating physician relied on.

25      Lastly, the Court finds the ALJ properly found Dr. Watrous' assessment conflicted with

26 evidence that Plaintiff responded well to treatment.  Specifically, in assigning reduced weight to

27 Dr. Watrous' opinion, the ALJ stated that "[m]oreover, the claimant often reported good

28

1   management of her symptoms with medications." (AR 26.)[8]   The Court's review of the cited

2   records shows the ALJ's reasoning to be supported by the record.  (See AR 402 (on 7/15/2015,

3   stating lumbago was "clinically stable on Enbrel injections and should continue due to

4   improvement on this treatment"), AR 429 (on 10/26/2015, stating fibromyalgia was clinically

5   stable on Enbrel injections and should continue), AR 398 (on 6/13/2016, stating "patient is

6   clinically stable on pain medicines and should continue due to improvement on this treatment"),

7   AR 406 (on 7/13/2016, stating fibromyalgia was "clinically stable on pain medicines and should

8   continue on this treatment . . stable on Stelera injections and should continue due to

9   improvement"), AR 409 (on 8/16/2016, stating the same), AR 416-17 (on 2/15/2017, stating the

10   same), AR 748 (on 9/13/2017, stating Plaintiff's fibromyalgia was clinically stable on pain

11   medicines and should continue), AR 712 (on 10/11/2017, stating relief from pain therapies over

12   last week was 70%, and relief enough to make real difference in life), AR 698 (on 10/25/2017,

13   stating "continued pain, but with adequate control of the pain with using their pain medications

14   [and] patient reports these are helping them to function better with their activities of daily living .

15   . .relief from pain therapies over the last week is 50%, and they report that there is enough pain

16   relief to make a real difference in their life"), AR 705 (on 12/21/2017, stating shoulder pain was

17   clinically stable on pain medicines and should continue), AR 708 (on 1/24/2018, stating myalgia

18   and myositis clinically stable on pain medicines and should continue due to improvement), AR

19   709 (on 2/7/2018, stating relief from pain therapies over last week was 80%, and relief enough to

20   make real difference in life), AR 726 (on 2/21/2018, stating relief from pain therapies over last

21   week was 60%, and relief enough to make real difference in life), AR 724 (on 3/7/2018, stating

22   patient is benefiting from pain medications), AR 715 (on 4/4/2018, stating relief from pain

23   therapies over last week was 65%, and relief enough to make real difference in life), AR 639 (on

24   6/6/2018, stating relief from pain therapies over last week was 80%, and relief enough to make

25   real difference in life), AR 648 (on 7/5/2018, stating relief from pain therapies over last week

26

---

27   [8]  The ALJ also stated in another portion of the opinion that Plaintiff "admitted her pain symptoms were typically well managed, at 80% or better pain relief, with medications." (AR 25.)  In the below section discussing the ALJ's

28   credibility determination, the Court discusses the apparent erroneous statement that relief was reported to be greater than 80%.

was 80%, and relief enough to make real difference in life), AR 719 (on 9/18/2018, stating relief from pain therapies over last week was 75%, and enough to make real difference in life), AR 653 (on 11/1/2018, stating relief from pain therapies over last week was 80%, and enough to make real difference in life), AR 659 (on 12/4/2018, stating "the relief from the pain therapies over the last week is 65%, and they report there[]is enough pain relief to make a real difference in their life"), AR 665 (on 1/8/2019, stating the "use of pain medication is giving a 80% improvement . . . feel it is making a difference in their life").

The ALJ's reliance on Plaintiff's repeatedly demonstrating improvement and good response to treatment as a specific and legitimate reason supported by substantial evidence in the record. See Villafan, 2018 WL 2734914 (affirming ALJ's rejection of a treating source opinion in part based on good response to treatment); Merritt v. Colvin, 572 F. App'x 468, 470 (9th Cir. 2014) ("The ALJ identified 'specific and legitimate reasons' to reject this opinion, including subsequent treatment records which reflected Merritt's positive response to treatment."); Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (in case where claimant was diagnosed with fibromyalgia, finding "the ALJ reasonably relied on his findings regarding Hanes's daily activities, her conservative treatment, and her positive response to that treatment to conclude that the assessments of Dr. Hawkins and Dr. Pena were inconsistent with the objective evidence in the record.").

For all of the above reasons, the Court finds the ALJ's analysis of the physician opinions, including Dr. Watrous' opinion in relation to the State agency physicians, was reasonable and the ALJ appropriately found Plaintiff more limited than the State agency physicians suggested, but not as limited as Dr. Watrous suggested. A review of the clinical findings cited and evaluated by the ALJ shows the ALJ's findings are supported by substantial evidence in the record. While the Court finds merit to Plaintiff's argument that she has demonstrated ongoing fibromyalgia symptoms to her doctors over a period of time, the Court finds the ALJ reasonably determined that though the records supported some limitations, Dr. Watrous' opined limitations were not adequately supported by objective findings reported in the opinion or exam records preceding the opinion as related to the subjective reporting appropriately discounted, and the improvement

1  shown through treatment.  While Plaintiff does suffer from medical ailments, which the ALJ and

2  agency physicians accepted, the ALJ did not err in giving little weight to the ultimate

3  conclusions of Dr. Watrous, because "[t]he ALJ is responsible for determining credibility,

4  resolving conflicts in the medical testimony, and for resolving ambiguities," Andrews, 53 F.3d at

5  1039, and the Court defers to the ALJ's rational resolution of conflicting evidence and

6  ambiguities in the record.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where

7  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

8  must be upheld.").

9       Accordingly, the Court finds that the ALJ properly gave reduced weight to Dr. Watrous'

10  opinion because it was inconsistent with objective medical data, unsupported by Dr. Watrous'

11  own examination records, relied on Plaintiff's subjective complaints which were rejected as

12  unreliable, and because Plaintiff consistently reported good management of symptoms with

13  medications, as reported throughout Dr. Watrous' exam records.

14  **C.**    **Whether the ALJ Provided Clear and Convincing Reasons to Reject**
15            **Plaintiff's Testimony**

16       Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting her

17  testimony.

18       1.    The Clear and Convincing Standard for Weighing Credibility[9]

19       "An ALJ is not required to believe every allegation of disabling pain or other non-

20  exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

21  and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

22  symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674

23  F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented

24  objective medical evidence of an underlying impairment which could reasonably be expected to

25  produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

26

27      [9]  The Commissioner "maintains that this standard is inconsistent with the deferential substantial evidence" standard,
28  but "acknowledges that the clear and convincing standard is part of this Circuit's law," and argues the ALJ's reasons
suffice under any standard.  (Opp'n 11 n.6.)

1   Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

2   show that her impairment could be expected to cause the severity of the symptoms that are

3   alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80

4   F.3d at 1282.

5       Second, if the first test is met and there is no evidence of malingering, the ALJ can only

6   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

7   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

8   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

9   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

10  the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

11  the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

12      Factors that may be considered in assessing a claimant's subjective pain and symptom

13  testimony include the claimant's daily activities; the location, duration, intensity and frequency

14  of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

15  effectiveness or side effects of any medication; other measures or treatment used for relief;

16  functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278

17  F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

18  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

19  statements concerning the symptoms, and other testimony by the claimant that appears less than

20  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

22  (quoting Smolen, 80 F.3d at 1284).

23      2.      The Parties' Arguments

24      Plaintiff argues the ALJ relied too heavily on objective medical evidence, which is

25  improper when the claim involves fibromyalgia, and the diagnoses and symptoms cannot be

26  determined by tests such as x-rays and MRIs.  (Br. 13.)  While the ALJ also stated the physical

27  exams showed no signs of synovitis, erythema, increased warmth or joint effusion in the

28  peripheral joints (AR 24), Plaintiff argues this amounts to an improper rejection of fibromyalgia

symptoms, Benecke, 379 F.3d at 590, and although Plaintiff may have muscle strength, sensory functions, and normal reflexes, that does not mean she is not suffering with the complained symptoms, Rollins, 261 F.3d at 863.

Defendant responds that the Social Security Act and regulations prohibit granting disability benefits based solely on a claimant's subjective complaints.   See 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques"); 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled.").  Defendant emphasizes that once a claimant has provided objective medical evidence of an impairment that could reasonably produce the alleged symptoms, the ALJ evaluates the intensity and persistence of the symptoms, and then evaluates whether the claimant's statements about symptoms are consistent with (1) the objective medical evidence; and (2) the other evidence in the record.  20 C.F.R. § 404.1529(c)(2)-(3); Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record.").

Defendant thus first argues that as required by the regulations, the ALJ compared the allegations that Plaintiff could only walk 10 minutes at a time, sit for 15 minutes at a time, and use her hands for only 5 minutes before they became numb, with the objective medical evidence, finding the Plaintiff's allegations were inconsistent with examination findings showing normal range of motion in all joints, walking with normal gait, rare presentation of swelling in the joints, and only mild to moderate tenderness on exam, (AR 24-25, citing AR 396-435, 534, 551-649, 654-75, 908-928).  (Opp'n 11-12.)

Second, Defendant argues the ALJ properly compared the allegations to other evidence, including the type and effectiveness of treatment received for the allegedly disabling symptoms, highlighting the ALJ noted that Plaintiff reported consistent improvement from medications,

1  with up to 80% relief of symptoms.  (Opp'n 12.)[10]

2      3.   The Court finds the ALJ Provided Clear and Convincing Reasons for Rejecting
3           Plaintiff's Symptom Testimony

4      a.   **Objective Medical Evidence**

5  While a lack of objective medical evidence cannot form the sole basis for an ALJ to

6  reject pain testimony, it is a proper factor the ALJ may consider in weighing a claimant's

7  testimony.  See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a

8  claimant's testimony is not fully corroborated by the objective medical findings, in and of itself,

9  is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although

10  lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor

11  that the ALJ can consider in his credibility analysis . . . Contrary to Burch's argument, the ALJ

12  did not solely rely on the minimal objective evidence and Burch's daily activities in discrediting

13  her testimony.  Indeed, these factors were among those he relied on, however, the ALJ made

14  additional specific findings to support his credibility determination.").

15  Above, the Court excerpted the ALJ's discussion regarding the ALJ's finding that the

16  Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were

17  "inconsistent because they are not fully supported by the objective medical evidence." (AR 24-

18  25.)  The ALJ stated the "objective findings in this case fail to provide strong support for the

19  claimant's allegations of disabling symptoms and limitations.  More specifically, the medical

20  findings do not support the existence of limitations greater than those reported in the residual

21  functional capacity statement." (AR 24.)  Also above, the Court reviewed the records cited by

22  the ALJ and determined that the ALJ's summary and utilization of the exam records from Dr.

23  Watrous was supported by substantial evidence.  (See AR 24-25, citing AR 396 (3/17/2016), 398

24  (6/13/2016), 402 (7/15/2015), 406 (7/13/2016), 409 (8/16/2016), 412 (11/15/2016), 416

25

26  [10]  Additionally, Defendant correctly notes that although Plaintiff argues that the ALJ relied on her daily activities,
and claims that those activities were not significant (Br. 13-14), and submits that Plaintiff misreads the ALJ's
27  decision.  Defendant requests the Court to reject Plaintiff's argument that relies on a misunderstanding of the
decision.  Plaintiff did not respond to this issue in the reply brief.  (ECF No. 34.)  The Court agrees with Defendants
28  that the ALJ only described the typical daily activities testified to, but the ALJ's opinion does not express utilize
such daily activities as a reason for discounting the testimony.  (AR 24.)

(2/15/2017), 420 (6/15/2015), 423 (8/11/2015), 426 (9/16/2015), 429 (10/26/2015), 432 (12/17/2015), 435 (5/14/2015), 654 (11/1/2018), 660 (12/4/2018), 666 (1/8/2019), 699 (10/25/2017), 702 (11/28/2017), 704 (12/21/2017), 707 (1/24/2018), 710 (2/7/2018), 713 (10/11/2017), 716 (4/4/2018), 720 (9/18/2018), 724 (3/7/2018), 727 (2/21/2018), 730 (7/13/2016), 733 (8/16/2016), 736 (11/15/2016), 739 (2/15/2017), 742 (5/15/2017), 745 (8/9/2017), 748 (9/13/2017), 751 (9/27/2017), 754 (7/15/2015), 757 (9/16/2015), 908 (1/8/2019), 912 (2/7/2019), 916 (3/12/2019), 921 (4/3/2019), 928 (4/22/2019).)

Other than generalized arguments regarding fibromyalgia, Plaintiff has not established that the ALJ's summary or analysis of the medical records as discussed here was improper. The Court finds these were proper determinations supported by substantial evidence, and while not sufficient standing alone, are clear and convincing determinations when considered in conjunction with the ALJ's other reasoning. See Vertigan, 260 F.3d at 1049; Burch, 400 F.3d at 680-81; Rollins, 261 F.3d at 857 ("Assuming, without deciding, that fibromyalgia does constitute a qualifying 'severe impairment' under the Act, we nonetheless conclude that the ALJ stated sufficient specific reasons for not fully crediting Rollins' pain testimony . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2)."); Walker v. Barnhart, 148 F. App'x 632, 633–34 (9th Cir. 2005) ("Walker produced objective medical evidence that he suffered fibromyalgia . . . ALJ was required to identify clear and convincing reasons for discounting Walker's testimony that he could not work within the limitations proscribed by Dr. Silverman . . . [in addition to daily activities,] [t]he ALJ's identification of discrepancies between Walker's alleged symptoms and the objective medical evidence including treatment records, the x-ray, and the observations of other medical personnel also provided legitimate reasons for rejecting Walker's testimony."); Reichley v. Berryhill, 723 F. App'x 540, (Mem)–541 (9th Cir. 2018) ("The ALJ provided the requisite specific, clear, and convincing reasons . . . [including] sufficiently [identifying] inconsistencies between Reichley's testimony and the objective medical evidence . . . With respect to Reichley's fibromyalgia and lupus, the ALJ properly relied on

1   Reichley's testimony that she did not seek continued treatment with a rheumatologist despite her

2   assertions of disabling pain."); Annette H. v. Commissioner of Social Security, No. C20-6010

3   MLP, 2021 WL 2312892, at *3 (W.D. Wash. June 7, 2021) ("The ALJ specifically addressed

4   Plaintiff's fibromyalgia in forming the RFC and provided numerous reasons why the RFC

5   appropriately accounted for her conditions . . . the ALJ found the treatment record was

6   inconsistent with Plaintiff's testimony about the limiting effects of her symptoms . . . found she

7   only received conservative treatment for her fibromyalgia, did not experience an increase in her

8   symptoms when changing medication, she ambulated with a normal gait, and she demonstrated a

9   normal range of motion.").

10      While not sufficient alone, the ALJ also made the credibility determination based on the

11   Plaintiff's reported improvement with treatment, which the Court now turns to.

12      **b.   Improvement with Treatment**

13      Again the ALJ stated the following regarding Plaintiff's reaction to medication:

> She continued to treat with Dr. Watrous over the following years,
> who noted the claimant's variable pain symptoms, but she was
> generally well managed on a variety of pain medications and
> steroids.  Throughout her treatment with Dr. Watrous, physical
> examinations generally demonstrated mild to moderate joint
> tenderness with only mild swelling on occasion, and no significant
> redness, effusion, or loss of motion.   While Dr. Watrous
> appreciated some moderate tenderness in the fibromyalgia points
> on occasion, she reported only intermittently flaring fibromyalgia
> symptoms and generally good response to oral and injected
> medications.  Over the years, the claimant reported increasing pain
> or decreasing efficacy of her medications, requiring adjustments or
> new prescriptions.  However, even though the claimant reported
> ongoing pain, she admitted her pain symptoms were typically well
> managed, at 80% or better pain relief, with medications.  (Exhibits
> C1F, C4F, C5F, C6F).

23   (AR 24-25.)  The ALJ also stated in another portion of the opinion that the RC was supported by

24   the objective medical evidence as well as by the fact that "she admitted to generally good control

25   with medications."  (AR 27-28.)

26      Above, the Court reviewed and summarized the records pertaining to relief from pain

27   medication.  (See AR 402 (clinically stable on 7/15/2015), AR 429 (fibromyalgia clinically

28   stable on 10/26/2015), AR 398 (clinically stable on pain medications on 6/13/2016), AR 406

1  (same on 7/13/2016), AR 409 (same on 8/16/2016), AR 416-17 (same on 2/15/2017), AR 712

2  (relief at 70% on 10/11/2017), AR 698 (relief at 50% on 10/25/2017), AR 709 (relief from pain

3  therapies was 80% on 2/7/2018), AR 726 (relief at 60% on 2/21/2018), AR 715 (65% on

4  4/4/2018), AR 639 (80% on 6/6/2018), AR 648 (80% on 7/5/2018, AR 719 (75% on 9/18/2018),

5  AR 653 (80% on 11/1/2018), AR 659 (65% on 12/4/2018), AR 665 (80% on 1/8/2019).)

6       The Court notes that the ALJ specifically stated Plaintiff "admitted her pain symptoms

7  were typically well managed, at 80% or better pain relief, with medications."  (AR 25 (emphasis

8  added).)   The Court's review only found the maximum reported relief to be 80% within the

9  records.  Defendant's brief appears to gloss over this potential error stating: "the ALJ noted that

10 Plaintiff reported consistent improvement from medications, with up to 80% relief of

11 symptoms."  (Opp'n 12 (emphasis added).)  Given this statement in briefing, it does not appear

12 the Court overlooked any records where the relief was indeed reported to be above 80%.

13 Defense counsel is advised that if this glossing over was intentional, counsel and the Court

14 would be far better served by highlighting such errors in briefing, rather than leaving the Court to

15 determine such accuracy or omission, and presenting an argument why such error is harmless,

16 which the Court does find.

17      Accordingly, while the relief was actually reported **as low** as 50%, Plaintiff did

18 repeatedly report significant relief up to 80% from pain medications between February of 2018

19 and January of 2019, including multiple instances of 80%.  The Court finds the ALJ's finding

20 that Plaintiff's pain was reported to be well-managed and improved with medication to be a clear

21 and convincing reason based on substantial evidence in the record to reject the pain testimony.

22 Proctor v. Comm'r of Soc. Sec. Admin., No. CV-19-05503-PHX-MTL, 2020 WL 6796767, at *7

23 (D. Ariz. Nov. 19, 2020) ("The ALJ pointed to medical exams that show medications have

24 improved or controlled Plaintiff's functioning and pain [including one report of pain control and

25 improving quality of life at least 30% and 50% in another report] . . . the ALJ's reason for

26 discounting Plaintiff's testimony on this basis is supported by substantial evidence and is

27 adequately specific, clear, and convincing."); Lapuzz v. Berryhill, 740 F. App'x 596, 597 (9th

28 Cir. 2018) ("effectiveness of medication is a clear and convincing reason to discredit claimant

1   testimony") (citing <u>Tommasetti</u>, 533 F.3d at 1039-40); <u>Warre v. Comm'r of Soc. Sec. Admin.</u>,

2   439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with

3   medication are not disabling for the purpose of determining eligibility for SSI benefits.");

4   <u>Wellington v. Berryhill</u>, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment

5   successfully relieving symptoms can undermine a claim of disability."); <u>Orteza v. Shalala</u>, 50

6   F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such

7   credibility determinations include the claimant's daily activities, inconsistencies in testimony,

8   effectiveness or adverse side effects of any pain medication, and relevant character evidence.").

9       Given the length of reporting of improvement with medication cited by the ALJ, this is

10  not a case where the ALJ focused on a few isolated incidents that may be attributed to waxing

11  and waning.  <u>Compare</u> <u>Brian P. v. Saul</u>, No. 2:19-CV-09530 AFM, 2020 WL 4900870, at *6

12  (C.D. Cal. Aug. 19, 2020) ("After reviewing the medical record, the ALJ found that Plaintiff's

13  'medication is reportedly helpful' . . . Accordingly, substantial evidence of effective treatment

14  provides a specific, clear, and convincing reason to discount a claimant's subjective symptom

15  testimony . . .Here, the ALJ found consistent improvement in Plaintiff's mental health from

16  treatment and medication – as opposed to waxing and waning of symptoms."), <u>with</u> <u>Angela V. v.</u>

17  <u>Comm'r, Soc. Sec. Admin.</u>, No. 6:19-CV-0836-HZ, 2021 WL 1565788, at *3 (D. Or. Apr. 20,

18  2021) ("The ALJ rejected the severity of Plaintiff's testimony related to her fibromyalgia

19  because her condition purportedly improved with treatment modalities . . . however, the ALJ

20  erred by isolating a few examples of symptom improvement and ignoring the many others that

21  indicated continued, severe impairment [and] [t]he ALJ's failure to consider the longitudinal

22  record is particularly problematic given that the symptoms of fibromyalgia wax and wane such

23  that those suffering from it commonly experience bad days and good days.") (internal citations

24  and quotation marks omitted).

25      Accordingly, the Court finds the ALJ has provided clear and convincing reasons for

26  rejecting the Plaintiff's testimony.  <u>See</u> <u>Donathan v. Astrue</u>, 264 F. App'x 556, 559 (9th Cir.

27  2008) ("The ALJ stated that Drs. Hudson and Rice relied heavily on Donathan's subjective

28  reports of tender points and his fibromyalgia history, all of which is questionable in light of the

proper adverse credibility determination.  Donathan also presented with normal physical findings (*e.g.,* normal range of motion in neck, hips, etc.) aside from subjectively identified tender points.  Additionally, these physicians' opinions as to total disability were inconsistent with the record as a whole.").

## V.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Watrous' opinion, and clear and convincing reasons for discounting Plaintiff's testimony.  The Court finds the ALJ's decision to be supported by substantial evidence in the administrative record, and free from remandable legal error.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Anna Lynn Brown.  The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated:   __September 8, 2021__

_____
UNITED STATES MAGISTRATE JUDGE